### CENTRAL RY. SIGNAL CO. v. UNEXCELLED MFG. CO., Inc.

(Circuit Court of Appeals, Second Circuit. March 7, 1922.)

No. 214.

**Patents ⬤⟿328—954,330, for railway signal fusee, held void for lack of invention.**

The Niditch patent, No. 954,330, for a time-burning railway signal fusee, in the burning compound of which perchlorate of potash is substituted for chlorate of potash, previously used, to render it less liable to spontaneous combustion, *held* void for lack of invention; the two combinations and their characteristics having been previously fully known.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Central Railway Signal Company against the Unexcelled Manufacturing Company, Inc. Decree for defendant, and complainant appeals. Affirmed.

Ralph L. Scott, of New York City (F. P. Fish, of Boston, Mass., and A. S. Pattison and S. T. Cameron, both of Washington, D. C., of counsel), for appellant.

Duell, Warfield & Duell, of New York City (F. P. Warfield, H. S. Duell, and L. A. Watson, all of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The patent in suit is for a compound for railway signal fusees on patent No. 954,330, issued to Isidore Niditch on an application filed December 16, 1909, and granted April 5, 1910. It is a time-burning railway signal fusee. It is made of strong, tough paper, containing a combustible composition and provided with a spike at one end and ignition means at the other. Some are made so as to burn red, others green, and others yellow, and are required to burn a specified length of time. They are used as safety signals, to keep the proper distance between trains and prevent accidents. It is essential that they be absolutely dependable, for failure to function may produce loss of life or property. They are thrown from a moving train.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and therefore must have the qualities of toughness and strength, so as not to be broken, and the burning composition in the tube must be of such a character as will not be extinguished by the shock of throwing or by weather conditions, such as rain, snow, sleet, and high wind, or even when thrown into water pools or snow banks. It must be constructed so as to avoid danger to brakemen who handle them, and be capable of being stored with safety in warehouses, cabooses, and other parts of trains.

The two claims in suit read as follows:

1. A time-burning signal fusee, comprising a metallic nitrate sulphur, a carbohydrate and a perchlorate, all combined in about the proportions herein specified, producing a time-burning signal fusee compound burning with brilliancy and force of flame for the purpose described, and which is not subject to spontaneous combustion.

2. A time-burning signal fusee, comprising a metallic nitrate, sulphur, a carbohydrate and potassium perchlorate, all combined in about the proportions herein specified, producing a time-burning fusee compound with brilliancy and force of flame for the purpose described, and which is not subject to spontaneous combustion.

Questions of the validity of the patent and infringement are presented. The claim in brief is that by substitution of perchlorate of potash for chlorate of potash an advantage is obtained; that is, to decrease the susceptibility of the product to spontaneous combustion. The fact is that the other necessary requirements for fusees were old, and the inventor has not added any other advantage; that is to say, the burning time, the brilliancy and force demanded in the art, is fulfilled in a large decree by known compositions. The structure and composition of this new one is the same, except that the old chlorate is replaced by the perchlorate. Therefore the inquiry is: Was the substitution with the result obtained, invention? This has been answered below in the negative.

The claim of the patent is that the patentee has largely reduced the danger of spontaneous combustion by this substitution for the unstable potassium chlorate. The perchlorate is a chemical substance containing a greater amount of oxygen and holding it on a firmer bond, and it is not inclined to so easily give it up. It has been found that, under ordinary conditions of moisture and temperature encountered in the use of fusees, the acid produced by the moisture acting on the sulphur will not decompose the potassium chlorate, and spontaneous ignition will not take place. The specification, as well as the file wrapper, acknowledges this departure in the making of fusees in this one respect; and the claim is for this single purpose of reducing the liability of spontaneous combustion. Fusees have been made and used for 20 years or more; but the difficulty was that they did not always burn long enough, but sometimes exploded spontaneously, and it was to meet this condition that the patentee labored. Perchlorate has been known as long as chlorate. The difference between them had long been known to chemists, as the several German publications offered in evidence indicate. These publications had, long before Niditch's date of inventive thought, been available, even in this country. The use of perchlorate in fireworks avoided danger of spontaneous ignition. The

difference in the cost made, in America, more frequent use of chlorate. Appellant had used the well-known compound for fusees, but not the perchlorate. It was after it had secured the services of a chemist that perchlorate was used.

It is necessary that publications, to be available, must furnish such details as are necessary for the practical working of an invention. But the German publications did this. The patentee did not make any substantial change in the relation of the compounds. The articles in "Die Fuerwerkerei" by Eschenbacker (1897), and in "Leitfaden der Pyrotechnik" by Bujard (1899), and "Anorganische Chemie," a book on chemistry by Otto (1884), all refer to potassium perchlorate as a less active oxidizing agent than potassium chlorate, and as not harmless in mixtures containing combustible substances like sulphur or sulphide of antimonate, and that it is far less dangerous to handle than potassium chlorate. Otto, in 1884, referred to potassium perchlorate as "employed in fireworks as a substitute for potassium chlorate, a substance which is more dangerous to handle and is prone to spontaneous inflammation." These were full and complete disclosures, and anticipated what the patentee did here. Both the problem and the solution were set forth. The fact that these publications referred to the use of fireworks does not detract from the usefulness of this prior publication as an anticipation. The art of fireworks and fusees we hold to be the same. Pyrotechny is defined as:

"The management and mechanical application of fire.

"2. The fabrication of fireworks for military and ornamental purposes * * * the composition and scientific use of combustible substances employed as signals, as destructive agents, or for purposes of display."

The Century Dictionary and Cyclopedia, Vol. 6.

We think the patentee was dealing with pyrotechnic compositions which contained sulphur and carbohydrates as the burning material, coloring matter in the form of strontium, barium, or calcium nitrate, and potassium chlorate as the oxidizing agent. The sulphur and potassium chlorate, under certain climatic conditions, were subject to a reaction which yielded a gas spontaneously ignitable. All this had long been known in chemistry. The patent in suit is void for lack of patentable invention.

Decree affirmed.